**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

**COREY COLLINS**                                                                                    **PLAINTIFF**
**ADC #123735**

**V.**                                                    **1:04CV00082-WRW**

**DANNY CISSELL**                                                                                    **DEFENDANT**

**ORDER**

On May 24, 2006, Defendant filed a motion for summary judgment and brief in support,[1] seeking to dismiss Plaintiff's 42 U.S.C. § 1983 complaint on the grounds that he failed to establish a failure to protect claim and, alternatively, that he is entitled to the protections of sovereign and qualified immunity.  Defendant also filed a statement of undisputed material facts in support of his motion according to Local Rule 56.1 of the Rules of the United States District Court for the Eastern District of Arkansas.[2]  Counsel, on behalf of Plaintiff, responded.[3]

**I. Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[4]  The Court must view the evidence in the light most favorable to the nonmoving party, giving him the benefit of all reasonable factual

---

[1] Doc. Nos. 27 and 28.

[2] Doc. No. 29.

[3] Doc.30, #31, #32)

[4] Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

inferences.[5] A moving party is nevertheless entitled to summary judgment if the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he will have the burden of proof at trial.[6] To avoid summary judgment, the nonmovant must go beyond the pleadings and come forward with specific facts, "by [his] own affidavit" or otherwise, showing that a genuine, material issue for trial exists.[7] A nonmovant has an obligation to present affirmative evidence to support his claims.[8]

## II. Analysis

In a nutshell, Plaintiff alleges that Defendant allowed several gang member inmates into his barracks where they attempted to kill him by stabbing him numerous times.[9] This incident took place in response to an earlier verbal altercation between Plaintiff and a gang member inmate in the law library.

In order to make out his Eighth Amendment claim for failure to protect, Plaintiff must show that Defendant was deliberately indifferent to a substantial risk of serious harm to him.[10] However, not every injury suffered by one prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's

---

[5] Reed v. ULS Corp., 178 F.3d 988, 990 (8th Cir. 1999).

[6] Celotex, 477 U.S. at 322-23.

[7] Id. at 324; Fed. R. Civ. P. 56(e).

[8] Settle v. Ross, 992 F.2d 162, 163-64 (8th Cir. 1993).

[9] Doc. Nos .2, 5, 7, and 8.

[10] Farmer v. Brennan, 511 U.S. 825, 833 (1994) (the Eighth Amendment imposes a duty on the part of prison officials to protect prisoners from violence at the hands of other prisoners).

safety.[11]  Rather, to show deliberate indifference, Plaintiff must prove both that Defendant's acts objectively caused a sufficiently serious deprivation and that Defendant had a subjectively culpable state of mind.[12]

With respect to the subjective part of the analysis, Plaintiff must show that Defendant was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and that he drew that inference.[13]  This subjective element is critical to a successful "failure to protect" claim because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment."[14]  An official's failure to alleviate a risk that he should have perceived, but did not, is not sufficient for a finding of liability.[15] "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact . . . including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."[16]

---

[11] Perkins v. Grimes, 161 F.3d 1127, 1130 (8th Cir. 1998) (defendants did not act with a subjectively culpable state of mind when they housed detainee with an inmate who raped him; although placed on notice that inmate was disruptive, defendants had "no notice that [inmate] posed a threat of serious injury to [plaintiff] because [plaintiff] did not effectively alert them that he faced such a threat") (emphasis added).

[12] Id.

[13] Farmer, 511 U.S. at 837.

[14] Jensen v. Clarke, 73 F.3d 808, 810 (8th Cir.1996) (quoting Wilson v. Seiter, 501 U.S. 294, 297 (1991)).

[15] Farmer, 511 U.S. at 838.

[16] Id. at 842; see also Spruce v. Sargent, 149 F.3d 783, 786 (8th Cir. 1998) ("if a plaintiff presents evidence of 'very obvious and blatant circumstances' indicating that the defendant knew the risk existed, the jury may properly infer that the official *must* have known").

Prison officials may avoid liability by showing that they were unaware of any risk to inmate health or safety or that, although aware of the underlying facts indicating a sufficiently substantial danger, they believed that the risk was "insubstantial or nonexistent."[17] Additionally, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."[18]

According to Defendant's recitation of the facts, in January 2004, Plaintiff was housed at the Grimes Unit of the Arkansas Department of Correction. On January 12, 2004, Plaintiff got into a verbal altercation with inmate Dennis Davis regarding gang affiliations. The conversation between Plaintiff and inmate Davis continued for about five minutes, at which time the two seemed to square off. Other inmates intervened and prevented the altercation from becoming physical. Plaintiff decided to leave the law library and return to his barracks, which was the #14 barracks. Plaintiff did not report the incident involving inmate Davis to Defendant or any other officers.[19]

When Plaintiff arrived at the #14 barracks, he spoke to Defendant who at the time was standing in the central hub of the barracks. Defendant marked the log, and yelled upstairs to the control booth to open the door to the #14 barracks so Plaintiff could enter. Defendant was not able to open the door to the barracks, it had to be done by the control booth. Upon entering the barracks, Plaintiff began talking with one of his friends about the

---

[17] Farmer, 511 U.S. at 844.

[18] Id.

[19] See Doc. Nos. 27, 28, and 29.

incident with inmate Davis.  As Plaintiff and his friend were talking, he saw the door to the #14 barracks open and approximately ten inmates entered the cell, roughly six of whom were returning from church.  According to Defendant, when inmate Davis entered the barracks, Plaintiff grabbed a broom handle and struck him.  Inmate Davis then stabbed Plaintiff several times with a handmade shank.  Both inmates were injured.[20]

Plaintiff was returned to the unit approximately four hours later (from the hospital in Newport) and was placed in Administrative Segregation.  He was transferred to the North Central Unit three days later.  Defendant contends that Plaintiff did not have any prior problems with inmate Davis (in fact, Defendant claims they socialized together)[21] and inmate Davis was not listed on Plaintiff's enemy alert list prior to the January 2004 incident.

According to Plaintiff's recitation of the facts, he was confronted by inmate Davis in the law library about Davis' gang affiliation.[22]  Davis and three of his "homeboys"[23] jumped up and threatened Plaintiff.  Plaintiff immediately returned to barracks #14, where he lived.  Inmate Davis lived in the #8 barracks.  In order to obtain entry to a specific barracks, inmates must carry and show the guard on duty their ID badge.  Defendant guarded entry to the #14 barracks and was required to check all inmates' ID badges for entry to that specific barracks.  Defendant allowed Plaintiff entry to the #14 barracks because he lived

---

[20] Id.

[21] The deposition testimony indicates that prior to this incident the two inmates had never even had a conversation; rather, Plaintiff had seen and acknowledged inmate Davis in the population (see docket entry #27, Deposition testimony pgs. 11-12).  To say they socialized, as Defendant's counsel puts it, is really a mis-characterization of the substance of the testimony given.

[22] Doc. Nos. 30, 31, and 32.

[23] Identified as G-Slim, Boo, and Quick.

there.  After Plaintiff returned to the #14 barracks, he and a fellow inmate, David Calvin, observed inmate Davis and four fellow gang members engaging Defendant in conversation outside of the barracks.  Davis' fellow gang members did not live in the #14 barracks either.  After this conversation, Plaintiff contends that Defendant allowed inmate Davis and his fellow gang members access to the #14 barracks, despite the fact that he knew none of them were assigned to that barracks.  Plaintiff claims that it was inmate Davis who made the first advance toward him with a shank and in response Plaintiff hit him on top of the head with a broom.  Plaintiff further contends that Defendant and the other guards in the Grimes Unit knew of inmate Davis and his propensity for violence and were afraid of him.[24]  Last, Plaintiff contends that Defendant had a duty to protect him from assault and that his actions in knowingly and intentionally allowing inmate Davis into a barracks where he knew he was not housed, was a breach of that duty and a violation of Plaintiff's constitutional rights.

After a careful review of the submissions on file and the documentation submitted by the parties, it appears that genuine issues of material fact remain in dispute in connection with what Defendant actually knew with respect to inmate Davis.  Specifically, there is evidence upon which a jury could conclude that Defendant was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed when he allowed inmate Davis and the other four gang members into Plaintiff's barracks, and that he drew that inference.  Moreover, there is evidence to suggest that Defendant had notice of inmate Davis' propensity for violence. Finally, Defendant offered no evidence explaining

---

[24] Id.

why he allowed Davis into barracks #14, when Davis lived elsewhere. For these reasons, the motion for summary judgment is denied.

### IV.  Conclusion

In accordance with the above, IT IS THEREFORE ORDERED that:

1. Defendant's Motion for Summary Judgment is DENIED.

2. Jury trial remains set for July 24, 2006.

IT IS SO ORDERED this 11th day of July, 2006.

/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE